**In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, et al., Debtors.**

**Bankruptcy No. 88–00448.**

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 28, 1989.

M. Bruce McCullough, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for the debtor.

Christopher P. Hall, Jones, Day, Reavis & Pogue, New York City, for Smith Barney Harris Upham & Co., Inc.

Sheldon I. Hirshon, Proskauer Rose Goetz & Mendelsohn, New York City, for Rothschild, Inc.

MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This matter comes before the court by the court's own rule to show cause why this court should not vacate, as improvident, pursuant to 11 U.S.C. § 328(a), all orders of court hiring professional persons, to the extent that such orders provide for indemnification of such professional persons. After carefully weighing the equities, the court, albeit reluctantly, will not vacate the indemnification provisions; how-

ever, such provisions are modified as set forth below.

By an order of court dated April 7, 1988, the court approved the debtor's[1] retention of Smith Barney, Harris Upham & Co., Inc. ("Smith Barney") as investment banker and financial advisor to the debtor. Prior to court approval, the debtor and Smith Barney negotiated an agreement governing the terms and conditions of Smith Barney's engagement. This agreement contained, inter alia, provisions to indemnify Smith Barney in certain circumstances. The agreement between the debtor and Smith Barney, in pertinent part, provides as follows:

> [T]he [debtor] agrees to indemnify and hold harmless Smith Barney ... from and against any losses ... arising out of and relating to the financial advisory services performed ... hereunder including whether arising out of action taken or omitted by an Indemnified Person.... The [debtor] will not be responsible hereunder for any losses, claims, damages, expenses or liabilities to the extent they are found by a court of competent jurisdiction to have resulted solely from actions taken or omitted to be taken by an Indemnified Person due to its gross negligence or willful misconduct.

By an order dated July 1, 1988, the court approved the Official Committee of Unsecured Creditors of Allegheny International, Inc.'s (the "Creditors' Committee") retention of Rothschild, Inc. ("Rothschild") as the financial advisor to the Creditors' Committee. That order provided that the terms of Rothschild's engagement were "to be developed further by the debtor and the Committee and to be reported to the court." By an order dated November 18, 1988, the debtor was "directed to enter into an Indemnification Agreement with Rothschild, Inc. ... which provides the same protection afforded to the Debtors' Investment Banker, Smith, Barney, Harris, Upham and Company." The debtor balked at executing an indemnification agreement

with Rothschild; the Creditors' Committee moved to find the debtor in contempt. Before the court heard the motion for contempt, the debtor executed an indemnification agreement, which provided, inter alia, that "the Debtor ... agrees to indemnify and hold harmless Rothschild ... from and against any losses, claims, damages, expenses or liabilities whatsoever arising out of or relating to the financial advisory services performed by Rothschild, thereunder including whether arising out of action taken or omitted...." The indemnification agreement with Rothschild also provides that the debtor "will not be responsible ... for any ... liabilities to the extent they are found ... by a court of competent jurisdiction to have resulted solely from action taken or omitted to be taken by an Indemnified Person due to its gross negligence or willful misconduct." Although the Creditors' Committee and Rothschild settled their dispute with the debtor, the court questioned whether it had acted improvidently in allowing indemnification, and issued the instant rule to show cause.

■ Smith Barney and Rothschild contend that section 328(a) of the Bankruptcy Code, 11 U.S.C. § 328(a), does not empower the court to alter the indemnification agreement. Although this matter is sui generis, we disagree with their conclusion. Section 328(a) provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of develop-

---

1. In this opinion, the court refers to Allegheny International, Inc., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., and Chemetron Corporation, collectively as the debtor.

ments not capable of being anticipated at the time of the fixing of such terms and conditions.

Although the language of section 328(a) read with blinders on may support such a position, such a reading would lead to an illogical result. Section 328(a) empowers a debtor in possession or official committee to employ professionals on any reasonable terms and conditions of employment, *subject to court approval.* Section 328(a) further allows the court to alter the professional's compensation "[n]otwithstanding such terms and conditions, if such conditions prove to have been improvident in light of" unanticipated developments "at the time of the fixing of such terms and conditions." If the court is able to alter the compensation, "[n]otwithstanding such terms and conditions," then it must follow that the court can alter the terms and conditions of the professional's employment. Although section 328(a) specifically refers to altering professional compensation "after the conclusion of such employment," it would be absurd to conclude that we must wait until the conclusion of such employment, when the court realizes that it has acted improvidently in approving the terms and conditions of such employment. Moreover, our construction of section 328(a) is entirely consistent with our broad equitable powers under section 105 of the Bankruptcy Code, 11 U.S.C. § 105.

After considering the arguments of Smith Barney and Rothschild, this court believes that it would be inequitable now to obviate all of the indemnification provisions. Moreover, several parties in interest suggest practical considerations for continuing indemnification. For example, any claim against the debtor under the indemnification provisions would be an administrative expense, subject to allowance or disallowance by this court.

Although we will allow some form of indemnification to continue, the present indemnification provisions are too broad. The court believes that it acted improvidently when it approved such broad language. The indemnification provisions for both Smith Barney and Rothschild exempt from indemnification actions or omissions which constitute gross negligence or willful misconduct. We think the exemption from indemnification for gross negligence is much too narrow. As both Rothschild and Smith Barney recite, investment bankers, similarly employed in other cases, have been subject to a more stringent standard. Smith Barney and Rothschild have appended to their respective memoranda indemnification agreements which proscribe indemnification for acts or omissions which are found to be negligent, rather than grossly negligent, as in the instant case. *See* Memorandum in Support of Indemnification of Rothschild, Inc., Exhibit E (Engagement Letter of Rothschild, Inc. by the Committee of Equity Security Holders of Texaco, Inc.), Exhibit F (Engagement Letter of Rothschild, Inc. by the Official Parent Committee of Creditors of the LTV Corporation); Memorandum in Support of Indemnification of Smith Barney, Exhibit B (Engagement Letter of E.F. Hutton by the Committee of Equity Security Holders of the LTV Corporation), Exhibit B (sic) (Engagement Letter of the First Boston Corporation by the Unsecured Creditors' Committee of the LTV Corporation). Rothschild and Smith Barney expect to receive handsome compensation for their services. At those rates of compensation, we do not think that it is unreasonable for their services to be presented with a high standard of professionalism. Indemnification and professionalism are not entirely consistent.

▮ The debtor in possession is a fiduciary. *Commodity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). This court has held that members of official committees, and the committees' counsel, are also fiduciaries. *United Steelworkers of America v. Lampl (In re Mesta Machine Co.),* 67 B.R. 151 (Bankr.W.D.Pa. 1986). We now hold that the investment bankers/financial advisors hired by the debtor and the Creditors' Committee are also fiduciaries. As such, they "have obligations of fidelity, undivided loyalty and impartial service in the interest of the creditors they represent." *Id.* at 156. At this juncture, we should be reminded of Judge

Cardozo's celebrated remarks in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928): "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden by those bound by fiduciary ties ... Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." In this connection, indemnification for negligence may be acceptable in "the workaday world for those acting at arm's length." However, holding a fiduciary harmless for its own negligence is shockingly inconsistent with the strict standard of conduct for fiduciaries. Therefore, the indemnification agreements are modified to provide that the debtor shall not indemnify Smith Barney or Rothschild for acts or omissions which are found by a court of competent jurisdiction to be negligent. We leave untouched the present language of the indemnification agreements which provide that the debtor shall not indemnify Smith Barney or Rothschild for acts or omissions which are found to be grossly negligent.

The present indemnification language also proscribes indemnification for acts of willful misconduct. Although willful misconduct may also encompass a breach of fiduciary duty, we now hold that the debtor may not indemnify Smith Barney or Rothschild for acts or omissions, which are found by this bankruptcy court or other court of competent jurisdiction, to be a breach of a fiduciary duty. We also leave untouched the present language of the indemnification agreements which provide that the debtor shall not indemnify Smith Barney or Rothschild for acts or omissions which are found to be willful misconduct.

We do not require the parties to execute new indemnity agreements. Rather, they may retain the existing agreements, as modified by this opinion. However, if the parties wish to execute new indemnity agreements, they may do so and submit them for approval by this court.

An appropriate order is attached.

### ORDER OF COURT

AND NOW, this 28th day of February, 1989, IT IS HEREBY ORDERED, AD-JUDGED AND DECREED that the rule to show cause why this court should not vacate as improvident, pursuant to 11 U.S.C. § 328(a), all orders of court hiring professional persons, to the extent that such orders provide for indemnification of such professional persons is GRANTED IN PART and DENIED IN PART, as set forth in the attached opinion.